## HUFF v. STATE ELECTION BOARD et al.

No. 25524.    May 18, 1934.

Mrs. I. L. Huff, pro se.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for respondents.

SWINDALL, J. Mandamus. The petitioner, Mrs. I. L. Huff, commenced this action against the State Election Board to determine her right to have her name placed upon the official primary election ballot as "Mrs. I. L. Huff," as a candidate for the office of Commissioner of Charities and Corrections. Petitioner filed her notification and declaration in form as provided in section 1, chapter 62, S. L. 1933. There is a clause in that instrument reading as follows:

"For the purpose of having my name placed on the official primary election ballot as a candidate for nomination by the _____ (name of party) Party, I, _____ (name in full as desired on the ballot) do solemnly swear (or affirm) that I reside at No. _____ Street, in the City of _____, State of Oklahoma, and that I am a registered _____, (party) voter in _____ precinct, City of _____ _____. * * *"

Petitioner filled in the blank spaces giving her name as she desired it printed on the primary ballot as "Mrs. I. L. Huff," and gave her correct street and city address and registration as a member of the Democratic party and the number of the precinct where registered. Her constitutional qualification as an elector and eligibility to hold the office she seeks is admitted. She is registered under section 5655, O. S. 1931, in the name of "Mrs. I. L. Huff."

The State Election Board advised petitioner she would not be permitted to have her name placed upon the official primary election ballot as desired, but must become a candidate for said office as "I. L. Huff, or under one or more of her Christian names and the surname of 'Huff,'" "I. L." being the initials of her husband. Petitioner contends that to refuse her request to have her name placed upon the primary ballot as "Mrs. I. L. Huff" will deprive her of the right to become a candidate in the name she adopted at the date of her marriage to I. L. Huff in 1913, and which she has ever since that date continuously for many years in good faith and for an honest purpose transacted her business and held herself out to her friends and acquaintances, with their acquiescence and recognition, and that she has held commissions from three Governors and transacted public business under the name of "Mrs. I. L. Huff," for the reason she is commonly known and identified by that name and has therefore lost her identity by her maiden Christian name. That statement of petitioner is admitted by the respondents. It is also admitted that no other candidate has challenged the right of petitioner to become a candidate under the name desired to be used by her. And admitted that the name was adopted by petitioner in good faith and without any intent to deceive or defraud the public or any third party. It is the contention of the respondents that "Mrs." is not a part of the full name of petitioner as contemplated by the Legislature in enacting chapter 62, supra, and for that reason only the State Election Board refuses to place the name of petitioner on the official primary election ballot as "Mrs. I. L. Huff," and she has commenced this action to compel it to do so.

The sole issue for us to determine is the right of petitioner to have her name printed on the ballot as "Mrs. I. L. Huff," or must she comply with the demand of the respondents and have her name printed thereon as "I. L. Huff," or give one or more of her Christian names and not use "Mrs." as a part of her name. The clause of section 1, quoted herein, provides that the candidate shall insert his or her name after the capital letter "I, ------------------- (name in full as desired on the ballot)." The information required to be disclosed by the candidate as to full name, residence, and registration was evidently required to be furnished so a proper investigation might be made by the Election Board or a candidate that might desire to challenge the filing of some other candidate for the same office within the time and manner provided by law.

This court, in the case of Roberts v. Mosier et al., 35 Okla. 691, 132 P. 678, held that:

"Although the custom is universal for all male persons to bear the name of their parents, there is nothing in the law prohibiting a man from taking another name, if he so desires; nor is there any penalty or punishment for so doing."

In that case it was contended by the plaintiff in error, who held a second mortgage, that hers should be declared prior to that of defendant in error, Jacob Mosier, alias Fred Mosier, on the ground that the same was taken in favor of Fred Mosier in fraud of the revenue laws of the state, for the purpose of evading the payment of taxes justly due this state. It was the contention of Mosier that the mortgage held at that time was taken in his name, to wit, Fred Mosier, he at that time adopting the name of Fred Mosier for the purpose of transacting his business. The case was tried to the court without a jury, and a general finding made in favor of Mosier, obviously upon his theory and contention, and it was sustained by this court on appeal. In that opinion this court quoted at length from In re John Snook, 2 Hilton (N. Y.) 566, which gives a very complete discussion of the origin and use of given and surnames. At page 575 of that case we find the following language:

"All that the law looks to is the identity of the individual, and when that is clearly established the act will be binding upon him and upon others."

The Snook Case is again mentioned by this court in the case of Bacon v. Dawson, 53 Okla. 689, 157 P. 1033, involving the sale of certain land of Henryetta Downing, a minor 10 years of age, by her guardian. The petition to sell real estate by the guardian is entitled, "In the Matter of the Guardianship of Peggie Sanders, Minor," and commences with the following recital: "Comes now Joe Wolfe, the guardian of Peggie Sanders, * * * minor, and shows to the court," etc. From that time throughout the proceedings in the county court, including the issuance of the guardian's deed, whenever the name of the minor appears she is designated as "Peggie Sanders." In an action commenced in the name of "Peggie Bacon," for the purpose of canceling the guardian's deed, on account of the foregoing discrepancies, the trial court permitted the introduction of parol evidence which conclusively showed that Henryetta Downing, Peggie Sanders, and Peggie Bacon were but different names borne by the same person, and that the person so variously designated was the same person for whom Wolfe was appointed guardian and was the owner of the land described in the guardian's deed. Held, not error. In the body of the opinion, the court said:

"It seems to us, there being no fraud practiced upon the infant, and no irregularity in the guardianship proceedings, other than the one complained of, the question presented is merely one of identity, and the court was right in permitting the introduction of parol evidence for the purpose of showing that Henryetta Downing, Peggie Sanders, and Peggie Bacon were but different names borne by one and the same person."

In the case of Modern Brotherhood of America v. White, 66 Okla. 241, 168 P. 794, the assured many years before the date of the policy involved in that action had changed his name from William M. Ireland to Henry Head Grey, in which latter name the policy of insurance was issued. The court held that the fact the insured changed his name would not defeat a recovery by the beneficiary on the policy. This court in that case quoted with approval the case of Roberts v. Mosier, supra.

The earlier decisions dealing with the right of a person to change his name or adopt a name of his own choosing are collected in the notes to Smith v. U. S. Casualty Co. (N. Y.) 18 Ann. Cas. 701, 26 L. R. A. (N. S.) 1167, and Proctor v. Nance (Mo.) 132 Am. St. Rep. 555. Some of the cases there cited discuss the use of "Mr." and "Mrs." as titles and not as a part of the name of the person, some as affixes, and others as the right to change Christian and

surnames. Some are in harmony with the rule declared by this court, others disagree with that rule. Some consider the use of the abbreviations "Sr." and "Jr.," and the words "Senior" and "Junior," and hold that under certain circumstances they should be used and under others they should not. They are each founded upon a different state of facts from that here involved and no useful purpose can be served by quoting from them at length herein.

In Smith v. U. S. Casualty Co., supra, the syllabus reads:

"A person may, at common law, change his name in good faith and for an honest purpose, by adopting a new name and transacting his business and holding himself out under the new name, with the acquiescence and recognition of his friends and acquaintances, and this right is not abrogated by a statute authorizing a change of name by judicial proceedings."

It is a matter of common knowledge that at the present time there is a very distinguished woman holding an office in the Cabinet of the President of the United States and transacting official business in a name other than her marital name.

In Corpus Juris, vol. 45, p. 368, we find the rule stated:

"At marriage the wife takes the husband's surname, with which is used her own given name, and she may use the title 'Mrs.' to distinguish her from her husband, and as being a married woman. But she is not properly designated as 'Mrs.' followed by her husband's initial or given and surname, unless it be proved she is so known."

And at page 380 of the same volume the author says:

"It is sufficient, in legal proceedings and elsewhere, that a person is designated by a name by which he is commonly known and called, even though it is not his true name; and evidence is admissible to identify a person described by different names."

The time between the closing date of the filing period and the biennial regular primary day is short and between that primary and the run-off primary election is 21 days. There are frequently many candidates for the several elective offices and the voters are only acquainted with them or many of them by the names by which they are commonly known and called. That fact was known to the Legislature when it enacted the primary election law, and it is clearly the legislative intent that the candidate shall be so identified on the primary and run-off primary ballot that the voters may know for whom they cast their ballot and not be deceived or misled to vote for some candidate for whom they did not intend to vote, so it is not so much a question as to the true legal name of the candidate as it is that the voter may be informed as to the candidates by the names by which they are commonly known and called, and transact their important private or official business. Under the facts in the case at bar it was clearly proved that the plaintiff is and has been for about 20 years commonly known and identified as "Mrs. I. L. Huff." See, also, Badger Lumber Co. v. Collinson, 97 Kan. 791.

The Constitution commands that the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot (sec. 6, art. 3, Const.).

We do not care to enter into any lengthy discussion of this question, which has been so fully discussed in the text and cases we have cited, as well as many others. We shall content ourselves with expressing our adherence to the views of those courts which hold that a person may change his or her name in good faith and for an honest purpose, by adopting a new name and transacting his or her business and holding himself or herself out under the new name, with the acquiescence and recognition of his or her friends, and this right is not abrogated by the Constitution or any statute of this state; and that under the circumstances of this case a married woman has the right to adopt "Mrs." as a part of her name with equal propriety as she could an additional Christian or given name or initial. The honesty and good faith of the petitioner in adopting the name of "Mrs. I. L. Huff" being admitted, the writ is granted.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN. BAYLESS, and BUSBY, JJ., concur. WELCH, J., absent.

McNEILL, J. (concurring specially). The authorities appear to be uniform in holding that the designation of "Mr." or "Mrs." is no part of a person's name, but is a mere title. 19 R. C. L. 1933.

In the case of National Life & Accident Ins. Co. v. Saffold, 144 So. 816, the Supreme Court of Alabama said:

"The purpose of a name is to designate a person. This is accomplished when it is that by which she is known or called, as

when she herself declares it to be her name. Ingram v. Watson, 211 Ala. 410, 100 So. 557; Milbra v. S. S. S. & I. Co., 182 Ala. 623, 630, 62 So. 176, 179, 46 L. R. A. (N. S.) 274; 45 C. J. 376; Alabama Clay Products Co. v. Mathews, 220 Ala. 549, 126 So. 869; Martin v. Hemphill (Tex. Comm. App.) 237 S. W. 550, 20 A. L. R. 984."

In the case of Kirk v. Bonner, 57 S. W. (2d) 802, the Supreme Court of Arkansas said:

"The purpose of a name is to designate a person, and this purpose is accomplished when the name is that by which she is known or called. Nat. Life & Acci. Ins. Co. v. Saffold (Ala.) 144 So. 816."

In this case, the facts indicate that the term "Mrs.", though generally conceded by the authorities as a mere title, became a part of the name of the petitioner by which she was known and called and which she herself declares was her name. The record shows that she has held three public official positions under such name. These official positions called for warrants from the State Treasurer payable to petitioner under the name of "Mrs. I. L. Huff" in compensation for her public services.

From facts and circumstances revealed by the record, it appears that the petitioner has adopted the title "Mrs." as a specific part of the name by which she is commonly known, or called, and which she declares and asserts in good faith has been the fact for many years. Under these circumstances, I am of the opinion that she has accepted the title "Mrs." as a part of her real name, and that her real designation by name is "Mrs. I. L. Huff."