David T. Gibbons, J.
By pro se application, the defendant applies for post-judgment relief under CPL 440.10 (subd. 1, par. *747 [a]) to set aside and vacate the judgment of conviction herein upon the ground that the court was not legally constituted and, therefore, without jurisdiction.
Upon defendant’s plea of guilty, sentence as a second felony offender was imposed upon him on September 20, 1968, by County Court Judge Albert A. Oppido (now Justice of the Supreme Court) for terms of imprisonment as follows: robbery, first degree, from 20 to 40 years; grand larceny, first degree, from 5 to 20 years and assault, second degree, from 2% to 10 years, all of which to be served concurrently, and concurrently with sentences the defendant was then serving. Suspended sentences were then imposed upon the remaining counts of the indictment to which the defendant pleaded guilty.
The defendant contends that he ‘ ‘ was denied his constitutional rights to be adjudicated by a court of competent jurisdiction inasmuch as the presiding justice before whom he was tried, the Hon. Albert Oppido, of Nassau County Court, attained his tenure to the bench through election on a partisan Republican ticket which is in contravention to Art. 3, sec. 2 as prescribed by Art. 6, section 2 of the Constitution of the United States, and in consequence of the aforesaid state encroachment he was denied due process and equal protection of the law which is guaranteed under the Fourteenth Amendment and that District Attorney William Cahn also elected to office on a partisan Republican ticket is liable because he executed the prosecution before a party member judge whose interest was the same as his but without constitutional jurisdiction for Art. 6 section 10 of the New York State Constitution is an encroachment into the sanctity of the Constitution of the United States of America and is an erosion of the Doctrine of Separation of Powers ”.
The judicial, as a separate branch of the United States Government, is provided for in article III of the Constitution of the United States. This article concerns itself with the powers, formation and jurisdiction of the Federal system of jurisprudence which embraces the Supreme Court and all inferior United States courts.
The provisions for the appointment of Justices of the United States Supreme Court and Judges of the inferior Federal courts contained in article III must be read together with article II (§2, subd. 2) which gives to the President the power to appoint such Federal Judges 11 with the Advice and Consent of the Senate ”.
The provisions of article III, however, have no controlling effect-upon the establishment powers, jurisdiction and manage *748 ment of the court systems of the respective States, nor with the manner of selection of their judiciary.
In Atlantic Coast Line R. R. Co. v. Engineers (398 U. S. 281, 285) the Supreme Court of the United States held that: ‘1 "When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. But those powers that were not surrendered were retained by the States and unless a State was restrained by 1 the supreme Law of the Land ’ as expressed in the Constitution, laws, or treaties of the United States, it was free to exercise those retained powers as it saw fit. One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies ”. (See, also, Missouri v. Lewis, 101 U. S. 22; Nashville, Chattanooga & St. Louis Ry. Co. v. Alabama, 128 U. S. 96.)
There is nothing contained in said article III of the United States Constitution which mandates the respective States to establish their courts and to select their Judges in a manner similar to the one used in the Federal judicial system. Accordingly, the method of judicial selection of County Court Judges who “ shall be chosen by the electors of the county”, as provided for by section 10 of article VI of the New York State Constitution, .is an allowable exercise of State’s right to provide its own method of selection of County Judges, and this is in no way in conflict with the provisions of article III of the United States Constitution.
The fact that the judgment of conviction herein came into being at a time when the County Judge and the District Attorney were, when elected to office, candidates of the same political party, provides no basis for the claim that this happenstance constituted an erosion of the doctrine of separation of powers. Our constitutional system does not require that the elective officers of each of these respective branches of government be of different political persuasions.
The constitutional doctrine of separation of powers is violated when one branch of government presumes to exercise the duties and powers of another branch contrary to constitutional authority.
Although, by its Constitution, the State of New York has established the policy of having its County Judges ‘ ‘ chosen by the electors of the county ”, under an election process by which candidates for such judicial offices are designated as candidates of the several political parties, nevertheless, such candidates are not partisan to the extent of supporting or espousing any political doctrine or philosophy. As stated in Mastrella v. Commis *749 sioners of Elections (58 Misc 2d 31, 33) “ Judicial officers are unitary regardless of the number of seats to be filled in any given election. A candidate runs for the office rather than against a given opponent".
The law is not a body of partisan concepts, relying upon as many different interpretations as there may be different political parties, and when a candidate is elected to the office of Judge, he must impartially apply the law in the same manner regardless of the racial or ethnic origin of the political beliefs of those who may come before him.
In Cox v. Katz (22 N Y 2d 903, 905) the Court of Appeals succinctly stated this established precept as follows: “ The function of judges, it is manifest, is to apply the law, not to represent or champion the cause of a particular constituency ’ ’.
In writing for the Supreme Court of the United States in Colegrove v. Green (328 U. S. 549, 552-553) Mr. Justice Frankfurter said: ‘ ‘ It is hostile to a democratic system to involve the judiciary in the politics of the people ”. (Cited with approval in Kail v. Rockefeller, 275 F. Supp. 937, 941.)
It may be said with the same force and effect that the quasi-judicial office of District Attorney is likewise not a public office which was created to carry out any partisan political policies. Although the District Attorney may be chosen from candidates bearing different political labels on the ballot, his enforcement of the law must be impartial and the same with respect to all of the people regardless of their racial or ethnic background or their political persuasions.
The provisions for the election of County Judges as provided for by section 10 of article VI of the New York State Constitution, are not violative of article III, the judicial article of the Constitution of the United States.
There is no valid basis for the defendant’s motion, and, it is, therefore, ordered, that the defendant’s motion is hereby denied in all respects on the merits.